IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL PARAGON CORP.; SUNQUEST PROPERTIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INGERSOLL-RAND COMPANY, *et al.*, <br><br> Defendants. | No. C 05-03100 MJJ <br><br> **ORDER re MOTION TO DISMISS** |

Pending before the Court is Defendants Ingersoll-Rand Company Limited, Ingersoll-Rand Company, Schlage Lock Company, and Touch-Plate International, Inc.'s, Motion to Dismiss Plaintiffs' Complaint (Doc. #20). Plaintiffs Universal Paragon Corporation and Sunquest Properties, Inc., have filed an Opposition (Doc. #23), and Defendants have filed a Reply (Doc. #28). For the following reasons, the Court denies Defendants' Motion.

**I.    Legal Standard - Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta*

*Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Further, dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). In considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

## II.   Plaintiffs' Allegations

Plaintiffs have owned extensive real property in the Baylands area of San Francisco and Brisbane, California, since 1989. Defendants are owners and lessors of certain real property located near, and in some cases contiguous to, Plaintiffs' property. Plaintiffs claim that Defendants' manufacturing activities caused substantial soil and groundwater contamination to Plaintiffs' property. Specifically, Plaintiffs allege that their property became substantially contaminated with a variety of hazardous substances, including chromium, lead, oil, zinc, trichloroethane, trichloroethelene, dichloroethlylene, perchloroethylene, and vinyl chloride.

In March 1994, March 1995, and March 1996, Plaintiffs and Defendants signed three consecutive agreements, which tolled all limitations periods as to Plaintiffs' state and federal claims relating to the contamination. In December 1996, Plaintiffs filed a lawsuit in federal court against Defendants, seeking damages, indemnity, declaratory relief, and injunctive relief for the contamination caused to Plaintiffs' property. The parties, however, continued to cooperate to develop a remedial action plan and to resolve the lawsuit. Plaintiffs allege that, "[d]uring 1999 and 2000, Defendants promised Plaintiffs that, if Plaintiffs dismissed the [federal lawsuit] without prejudice and agreed to toll the statute of limitations, the [p]arties would work together to analyze the nature, source, and extent of contamination in the vicinity of the [p]arties' respective property and develop remedial plans." Plaintiffs allege that, in reliance on these promises and representations, they agreed to dismiss their federal lawsuit. Soon thereafter, the parties executed a Tolling and Cooperation Agreement and a Mutual Access Agreement (collectively, "the 2000 Agreement"). After the terms of the 2000 Agreement expired, Plaintiffs allege that Defendants agreed to extend its terms, including the tolling of the

limitations periods, while the parties negotiated and engaged in mediation to remediate the contamination. Plaintiffs aver that, "[i]t is in reliance on these representations by Defendants that Plaintiffs agreed not only to move forward with investigation and negotiations[,] but also to refrain from refiling their Federal Claims against Defendants." The parties continued to work together toward a mutual cleanup effort until early 2005. At this time, Plaintiffs allege that the parties arrived at an impasse and mediation stopped. As a result, Plaintiffs filed this lawsuit on July 29, 2005.

In their Complaint, Plaintiffs assert the following claims: (1) cost recovery under Sections 107 and 113 of the Comprehensive Environmental Responsibility Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 and § 9613; (2) continuing nuisance; (3) nuisance per se; (4) public nuisance; (5) negligence; (6) negligence per se; (7) trespass; (8) indemnity; (9) breach of contract; (10) strict liability; (11) violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a); (12) declaratory relief seeking a determination of Plaintiffs' liability, if any, with respect to the investigation, testing, and cleanup of the contamination and Plaintiffs' damages; and (13) promissory estoppel. Defendants have moved to dismiss Plaintiffs' Complaint in its entirety. With respect to Plaintiffs' federal claims under CERCLA and RCRA, Defendants argue that both claims fail as a matter of law. Thus, Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and dismiss the Complaint for lack of subject matter jurisdiction. Alternatively, Defendants argue that several of Plaintiffs' state law claims are time-barred, and are therefore subject to dismissal. The Court will assess each of these arguments, in turn.

**III.   Discussion**

    **A.**    **CERCLA Claim**

Plaintiffs' First Claim for Relief is entitled, "CERCLA Section 107(a) for Cost Recovery," and alleges in relevant part:

> 98.   Under Sections 107 and 113 of [CERCLA], Plaintiffs seek payment from Defendants for all past, present, and future response costs incurred in response to Defendants' release of hazardous substances. As the past and current owners of Defendants' Property and as the entities responsible for the release and continued threat of the release of hazardous substances into the groundwater, Defendants, and each of them, are liable for the groundwater contamination pursuant to 42 U.S.C. § 9607(a).

3

102.  Defendants, and each of them, are jointly and severally liable to Plaintiffs pursuant to 42 U.S.C. § 9607(a) for all or part of the past, present, and future costs of response, including without limitation, investigation, and remediation expenses, attorneys' fees, oversite costs and interest, resulting from the release by Defendants of hazardous substances in connection with Defendants' Property, in an amount to be determined at the time of trial. Defendants move to dismiss this claim on the ground that Plaintiffs cannot recover under either Section 107(a) or 113(f) of CERCLA.

### 1. Overview of CERCLA §§ 107 and 113

Section 107(a) of CERCLA authorizes a cause of action for cost recovery, whereby a party may initiate a suit to recover "necessary costs" incurred in responding to a release or threatened release of hazardous substances against any of four classes of "potentially responsible persons" ("PRPs"). These PRPs include: (1) current owners and operators of contaminated facilities; (2) previous owners and operators of contaminated facilities; (3) generators of hazardous substances; and (4) transporters of hazardous substances. 42 U.S.C. § 9607(a). Concurrently, § 113(f) of CERCLA "allows persons who have undertaken efforts to clean up properties contaminated by hazardous substances to seek contribution from other parties liable under CERCLA." Specifically, Section 113(f) provides, in relevant part:

> (1) Contribution
> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.
>
> (2) Settlement
> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
>
> (3) Persons not party to settlement
>
> (B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek

4

contribution from any person who is not party to a settlement referred to in paragraph (2).

### 2.     Defendants' Challenges to § 113 Claim

Defendants first argue that, to the extent that Plaintiffs' Complaint seeks contribution under § 113(f), Plaintiffs must plead and prove either that: (1) they are subject to a civil action under CERCLA §§ 106 or 107(a); or (2) they are parties to an administrative or judicially-approved settlement that resolves their liability to the United States or a State. Because Plaintiffs cannot make these allegations, Defendants contend that Plaintiffs cannot recover under § 113(f). In support, Defendants cite *Cooper Industries. v. Aviall Services*, 543 U.S. 157 (2004), wherein the Supreme Court held that a private party may not obtain a judgment for contribution under § 113(f)(1) unless that party has been sued under § 106 or § 107 of CERCLA.

In their response, Plaintiffs argue that the final clause of § 113(f)(1) relieves them of this requirement. However, in *Cooper*, the Supreme Court expressly rejected this argument, stating that this clause, "does not itself establish a cause of action; nor does it expand § 113(f)(1) to authorize contribution actions not brought 'during or following' a § 106 or § 107(a) civil action; nor does it specify what causes of action for contribution, if any, exist outside § 113(f)(1)." Thus, Plaintiffs are foreclosed from making this argument.

Reviewing Plaintiffs' Complaint, Plaintiffs have not alleged that they are bringing their claim "during or following" a civil action pursuant to § 106 or § 107. Nor have Plaintiffs alleged that they have resolved their liability to the United States or California by entering into a judicially-approved settlement agreement, such that they would be permitted to bring a claim pursuant to § 113(f)(3)(B). Taken together, because Plaintiffs have failed to meet the requirements under § 113(f)(1) or §113(f)(3)(B), Plaintiffs' are precluded from bringing a contribution claim pursuant to § 113(f).

### 3.     Defendants' Challenges to Plaintiffs' § 107 Claim

Having determined that Plaintiffs are foreclosed from proceeding under § 113, the Court must assess whether Plaintiffs have plead a cognizable claim under § 107. As indicated above, "Section 107 of CERCLA authorizes suit against certain 'responsible parties' to recover costs incurred in cleaning up hazardous waste disposal sites." *The Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1300 (9th Cir. 1997). Under § 107(a), a PRP is liable for: "(A) all costs . . . incurred by the United States

5

Government or a State or an Indian tribe . . . [and] (B) any other necessary costs of response incurred by any other person [.]" 42 U.S.C. § 9607(a)(4)(A), (B).

In their Motion, Defendants contend that, to the extent Plaintiffs assert a claim for total cost recovery pursuant to § 107 of CERCLA, Plaintiffs are precluded from bringing such a claim because they are a PRP. In Support, Defendants cite *Pinal Creek*. In that case, the Ninth Circuit reasoned, "[b]ecause all PRPs are liable under [Section 107], a claim by one PRP against another PRP necessarily is for contribution . . . [and] [a] PRP's contribution liability will correspond to that party's equitable share of the total liability and will not be joint and several." 118 F.3d at 1301. Thus, the court held that, "under CERCLA, a PRP does not have a claim for the recovery of the totality of its cleanup costs against other PRPs, and a PRP cannot assert a claim against other PRPs for joint and several liability." *Id.* at 1306. In their Opposition, Plaintiffs do not appear to dispute that under *Pinal Creek* they are precluded from seeking to recover the total cleanup cost from Defendants. In fact, Plaintiffs indicate that they are only seeking contribution from Defendants, which they argue is not precluded under either *Cooper* or *Pinal Creek*. The Court agrees.

In *Pinal Creek*, the Ninth Circuit's holding was limited to the issue of whether a PRP could recover all of its cleanup costs from other PRPs pursuant to a claim under § 107 and § 113, in tandem. As indicated above, the court held that, because a PRP necessarily shares responsibility for the cost of cleanup, it could not recover against other PRPs based on a joint and several liability theory. 118 F.3d at 1306. However, the court did not hold that a PRP-plaintiff is precluded from seeking *contribution* under § 107. To the contrary, the court acknowledged that "a claim for contribution . . . is embedded in the text of § 107."[1] *Id.* at 1301; *see also W. Prop. Serv. Corp. v. Shell Oil Co.*, 358 F.3d 678, (9th Cir. 2004). This is consistent with the Supreme Court's language in *Key Tronic Corporation v. United States*, 511 U.S. 809, 816 (1994), wherein the Court recognized that § 107 and § 113 both authorize causes of action for contribution that are "similar and somewhat overlapping." *See also Cooper Indus.*, 125 S. Ct. at 586-88 (Ginsburg, J., dissenting).

Further, several district courts have addressed the issue of whether § 107 impliedly authorizes

---

[1] In fact, the defendants in that matter conceded that the plaintiff was entitled to assert a contribution claim under § 107. *Id.* at 1305.

6

a claim for contribution in light of both *Cooper* and *Pinal Creek*, and have held that such a claim does exist. *See Adobe Lumber, Inc. v. Taecker*, 2005 WL 1367065, at *1-2 (E.D. Cal. May 24, 2005); *Kotrous v. Goss-Jewett Co.*, 2005 WL 1417152, at *3-4 (E.D. Cal. June 6, 2005); *Ferguson v. Arcata Redwood Co.*, 2005 WL 1869445, at *6 (N.D. Cal. Aug. 5, 2005); *Aggio v. Aggio*, 2005 WL 2277037, at *4-6 (N.D. Cal. Sept. 19, 2005). In each of these decisions, the court concluded that the Ninth Circuit has recognized a claim for contribution, whether express or implied, exists under § 107, which is unaffected by the *Cooper* decision. The Court finds the reasoning in these decisions sound and, based upon the current state of the case law assessing claims under § 107 and § 113, is compelled to reach the same conclusion here. Accordingly, the Court finds that to the extent that Plaintiffs seek to recover the totality of their cleanup costs against Defendants pursuant to § 107, the Court **GRANTS** Defendants' Motion to dismiss such claim. However, to the extent that Plaintiffs seek only equitable contribution against Defendants pursuant to § 107, the Court **DENIES** Defendants' Motion.

Moreover, because Plaintiffs' § 107(a) claim survives, a basis for federal subject matter jurisdiction exists in this case. The Court therefore **DENIES** Defendants' request that the Court refuse to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss the case.

### B. Plaintiffs' Resource Conservation and Recovery Act Claim

In their Eleventh Claim for Relief, Plaintiffs assert a claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq*. Defendants move to dismiss this claim because Plaintiffs have failed to provide the required notice under § 6972(b)(2)(A), and because the State of California has already addressed the relief that Plaintiffs seek. At oral argument on Defendants' Motion, Plaintiffs indicated that they withdraw their RCRA claim. Accordingly, the Court **DENIES AS MOOT** Defendants' Motion with respect to Plaintiffs' RCRA claim.

### C. Timeliness of Plaintiffs' State Law Claims

Defendants argue that Plaintiffs cannot state a valid claim for negligence, negligence per se, indemnity, strict liability, or declaratory relief because the three-year statute of limitations applicable to these claims has expired. *See* Cal. Civ. Proc. Code § 338(b). Likewise, Defendants argue that Plaintiffs' breach of contract claim is time-barred, because Plaintiffs failed to bring it within the four-year limitations period applicable to breach of contract claims. *See* Cal. Civ. Proc. Code § 337.

7

In support, Defendants contend that pursuant to the 2000 Agreement, Plaintiffs agreed to dismiss the federal lawsuit without prejudice, and the parties agreed that the that the limitations periods as to all of Plaintiffs' actual or alleged claims would be tolled until July 1, 2001. Defendants contend that after the July 1, 2001 date expired, and the parties did not execute any agreement further tolling the limitations period, the applicable limitations periods "commenced running." Thus, Defendants assert that the statute of limitations on Plaintiffs' negligence, negligence per se, strict liability, indemnity, and claim for declaratory relief expired on July 1, 2004 - three years after the expiration of the 2000 Agreement. Similarly, Defendants argue that, with respect to Plaintiffs' breach of contract claim, the limitations period expired on July 1, 2005 - four years after the expiration of the 2000 Agreement. Because Plaintiffs did not file this lawsuit until July 25, 2005, Defendants contend that all of the above claims are time-barred.[2]

Plaintiffs proffer two theories in response to Defendants' statute of limitations challenges. First, Plaintiffs urge the Court to apply the doctrine of equitable tolling "to the period following the dismissal of the federal lawsuit and throughout the period when Plaintiffs were working in good faith with Defendants to investigate and resolve the contamination issues." Under California law, "equitable tolling 'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison v. Cal.*, 146 Cal. Rptr. 224, 226 (1978)). Toward this end, the statute of limitations is tolled under the doctrine of equitable tolling if the plaintiff pursues his remedy in another forum and the actions satisfy three factors: (1) timely notice to the defendants in filing of the first claim; (2) lack of prejudice to the defendants in gathering evidence for the second claim; and (3) good faith and reasonable conduct in filing the second claim. *Id.* Generally, "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." *Id.* at 1276. As the Ninth Circuit recognized, "[a]t

---

[2] Further, Defendants argue that it is undisputed that Defendants Ingersoll-Rand Company and Touch-Plate International did not enter into any tolling agreement with Plaintiffs until March 2000. Defendants argue that, in their Complaint, Plaintiffs allege that they discovered that Defendants caused or contributed to the contamination in November 1993. However, Plaintiffs did not file their lawsuit until December 27, 1996 - after the three-year statute of limitations period had expired. Defendants submit that the 2000 Agreement did not apply to, or otherwise extend the limitations periods for these claims against Ingersoll-Rand and Touch-Plate because they had already lapsed.

8

a minimum, determining the applicability of equitable tolling necessitates a resort to the *specific* circumstances of the prior claim: parties involved, issued raised, evidence considered, and discovery conducted. Thus, the question ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone." *Id.* at 1276. Accordingly, the Ninth Circuit admonished that, unless it is evident from the fact of the complaint that plaintiff could not prevail on the equitable tolling issue, the "fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." *Id.* Here, although it is questionable whether the doctrine applies in light of the fact that Plaintiffs did not pursue any remedy in another forum, but rather filed and voluntarily dismissed their prior lawsuit in the district court, the Court declines to rule on Plaintiffs' argument at this stage. Accordingly, because Plaintiffs have raised a colorable argument supporting application of the doctrine of equitably tolling, the Court denies without prejudice Defendants' Motion to Dismiss Plaintiffs' state law claims as time-barred.[3]

Second, and perhaps more persuasively, Plaintiffs argue that Defendants are equitably estopped from raising any statute of limitations defense. California courts have recognized that, "[a] defendant will be estopped to invoke the statute of limitations where there has been 'some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action.'" *Shaffer v. Debbas*, 21 Cal. Rptr. 2d 110, 115 (Cal. Ct. App. 1993); *see also Doheny Park Terrce Homeowners' Ass'n, Inc.*, 34 Cal. Rptr. 3d 157, 165-66 (Cal. Ct. App. 2005). In *Shaffer*, the court noted that, "whether estoppel exists - whether the acts, representations or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice - is a question of fact and not of law." *Id.* Here, Plaintiffs have alleged:

> Verbally and by their actions, representatives of Defendants indicated their understanding and agreement to extend the 2000 Tolling Agreement throughout the negotiation and mediation process with Plaintiffs as well as the regulatory agencies. Furthermore, representatives of Defendants continued to assure Plaintiffs of their continuing agreement to toll the

---

[3] Furthermore, Defendants' argument regarding the expiration of the statute of limitations period requires the Court to consider facts outside the Plaintiffs' Complaint regarding the terms of the parties' agreements and their effect on the limitations period. Particularly, the parties have offered varying accounts of their respective understandings regarding the running of the limitations period after the parties' 2000 Agreement expired. Consequently, resolution of the timeliness issue is more appropriately addressed at the summary judgment stage based on a full evidentiary record.

9

statute of limitations during this time frame. It is in reliance on these representations by Defendants that Plaintiffs agreed not only to move forward with investigation and negotiations but also to refrain from refiling their Federal Claim against Defendants.

(Compl. at ¶ 74.) Based on these allegations, Plaintiffs have set forth at least a colorable argument that Defendants are equitably estopped from arguing that Plaintiffs' claims are time-barred.[4] Thus, this argument also supports the Court's denial of Defendant's Motion to Dismiss based on the running of the statute of limitations.[5]

## IV. Conclusion

For the foregoing reasons, the Court **DENIES IN PART AND GRANTS IN PART** Defendants' Motion to Dismiss (Doc. #20) as follows: With respect to Plaintiffs' First Claim for Relief, to the extent that Plaintiffs seek to recover their entire cleanup cost from Defendants pursuant to 42 U.S.C. § 107, the Court **GRANTS** Defendants' request to dismiss such claim. To the extent that Plaintiffs' are asserting a contribution claim against Defendants pursuant to 42 U.S.C. § 107, the Court **DENIES** Defendants' request to dismiss such claim.

Defendants' request to dismiss Plaintiffs' Eleventh Claim for Relief is **DENIED AS MOOT**.

Defendants' request to dismiss Plaintiffs' state law claims as untimely is **DENIED WITHOUT PREJUDICE**.

Further, the Court **DENIES AS MOOT** Defendants' Request for Judicial Notice (Doc. #21).

---

[4] In their Reply, Defendants argue that, "[c]ontract law governs this dispute, [and] there is no equitable principle to modify the terms of a written contract expressly resolving the limitations period for claims between the contracting parties." (Reply at 5.) In the same vein, Defendants assert that California law requires a writing signed by the contracting parties to extend limitations periods. The Court finds neither argument persuasive. With respect to Defendants' first argument, equitable tolling and equitable estoppel operate outside any agreement that the parties had regarding the controlling limitations periods. Contrary to Defendants' characterizations, the doctrines of equitable tolling and equitable estoppel are not a rules of contractual interpretation or modification. To be sure, neither one is used to read terms into a contract or reform an agreement. Rather, the doctrines operate wholly outside of and irrespective of the parties' agreements. Further, unlike equitable tolling, which extends a limitations period, equitable estoppel operates after a limitations period has expired, and holds that, despite this lapse, a party may still assert its claim. *See Doheny Park Terrace Homeowners' Ass'n, Inc.*, 34 Cal. Rptr. 3d at 165. Thus, because equitable estoppel does not *extend* the limitations period, any statutory writing requirement is irrelevant.

[5] In their Motion, Defendants contend that at least with respect to Ingersoll-Rand Company and Touch-Plate International, it is clear that the statute of limitations on Plaintiffs' claims has expired. However, because Plaintiffs' equitable tolling and equitable estoppel theories apply to all Defendants, the Court declines to reach this issue at this juncture.

United States District Court
For the Northern District of California

**IT IS SO ORDERED.**

Dated: November 22, 2005.

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE